UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
ANA QUEZADA,                           )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )        C.A. No. 18-611 WES
                                       )
CITY OF PROVIDENCE,                    )
                                       )
        Defendant.                     )
_____)

## <u>MEMORANDUM AND ORDER</u>

WILLIAM E. SMITH, District Judge.

    Before the Court is a Motion for Summary Judgment, ECF No.
18, filed by the City of Providence ("Defendant" or "City").   In
the alternative, Defendant moves for partial summary judgment as
to Plaintiff's claim of damages for emotional distress.   For the
reasons explained below, Defendant's Motion is DENIED in part, and
GRANTED in part.

I.  BACKGROUND

    During the events at issue, Plaintiff was employed as a
housing inspector in the City's Department of Inspection and
Standards ("the Department").   Def.'s Statement of Undisputed
Facts ("SUF") ¶ 1, ECF No. 19.   Plaintiff and her coworkers were
members of the Laborer's International Union of North America,
Local 1033, and Plaintiff was a union steward.   Id. at ¶¶ 3-4.

She also served as a state senator during this period.  Id. at ¶ 2.

On June 8, 2017, Plaintiff initiated a conversation with Department Director Jeffrey Lykins in an open office setting regarding concerns she had about recent hiring and promotion decisions.  SUF ¶¶ 5, 23-36.  During this conversation, Plaintiff questioned Mr. Lykins as to whether the Department did not promote another city employee, Rodis Rodriguez, who was employed at the Department as an Electrical Inspector II, because of his ethnicity.  See id. at ¶¶ 22, 34-35; Quezada Dep. 20:20-21:7, ECF No. 25-1.  Mr. Rodriguez was present for the conversation between Plaintiff and Mr. Lykins.  Quezada Dep. 27:23-28:2.  Mr. Lykins justified the delay in choosing a candidate by stating that the Department was instituting a new testing requirement; Plaintiff asserted that were Mr. Rodriguez "a white electrical inspector," the Department would not have imposed a testing requirement.  SUF ¶¶ 34-35.  During the conversation, Plaintiff also asserted that the Department had discriminated against an African-American apprentice inspector, treating him less favorably than a white counterpart.  Id. at ¶ 36.

There is conflicting evidence regarding other aspects of the conversation.  At his deposition, Mr. Lykins stated that Plaintiff loudly called him a racist, and that people across the office could hear the conversation.  Lykins Dep. 23:7-24:23, ECF No. 25-4.

2

Plaintiff disputes this account, pointing to her testimony that she stated that Mr. Lykins engaged in discriminatory actions, not that he was a racist.  Pl.'s Statement of Disputed Facts ¶ 36, ECF No. 25.  Additionally, she notes that there is no evidence that other employees were able to hear what was said during the encounter.  See id. at ¶ 37 (citations omitted).

The City subsequently held a disciplinary hearing and suspended Plaintiff for five days.  SUF ¶¶ 43, 49.  While Sybil Bailey, as Human Resources Director, was the ultimate decision maker regarding discipline, she and Mr. Lykins discussed which disciplinary measures should be taken.  Id. at ¶¶ 44, 48.  In deciding to impose the suspension, Ms. Bailey represented that she took into account a previous warning Plaintiff had received for "unprofessional and inappropriate behavior" after a contentious conversation with a colleague.  Id. at ¶ 15, 50, 51.  News of Plaintiff's suspension was reported in the local press.  Id. at ¶ 52.

Plaintiff claims that the City violated Title VII and the Rhode Island Fair Employment Practices Act by retaliating against her for opposing discrimination in the workplace.  Compl. ¶¶ 18-25, ECF No. 1-1. She seeks compensatory damages, punitive damages, and attorney's fees and costs.  Id. at 4-5.  Plaintiff asserts that her suspension was "widely known by people inside and outside of the City government" due to the press coverage of her

3

suspension, and that as a result of the suspension, Plaintiff "lost wages, suffered embarrassment and humiliation, and her reputation has been harmed." Id. at ¶¶ 14, 16.

Defendant argues in its Motion that it is entitled "to summary judgement because the suspension arose not out of the content of Ms. Quezada's complaints, but the time, place and manner in which she chose to express them." Mot. for Summary J. 1. Alternatively, Defendant seeks partial summary judgment on Plaintiff's claim for damages arising from the publication of her suspension, arguing that Plaintiff "cannot point to any admissible evidence" demonstrating that Defendant leaked news of her suspension to the media. Id.

II. LEGAL STANDARD

Summary judgment is proper if the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) ("[A] party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." (citing to Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986))).

In determining whether summary judgment is proper, the Court "view[s] the record in the light most favorable to the party opposing the motion, accepting all reasonable inferences favoring that party." Contl. Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991) (citation omitted).  At this stage, the Court is not tasked with "weigh[ing] the evidence but [rather] determin[ing] whether there is a genuine issue for trial." Id. (quotation and citation omitted).

III. DISCUSSION

Title VII prohibits "discriminat[ion] against any . . . employee[] . . . [because she] has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).  Employers are further prohibited from discriminating against employees because of their membership in certain protected classes, such as race.  See 42 U.S.C. § 2000e-2(a)(1); see also 42 U.S.C. § 1981.  A claim of retaliation "in contravention of Title VII prompts a three-step analysis[,]" known as the McDonnell Douglas factors.  Jennings v. Tinley Park Cmty. Consol. School Dist. No. 146, 864 F.2d 1368, 1371 (7th Cir. 1988) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)).

Plaintiff first "has the burden of proving a prima facie case of discrimination based upon opposition to an unlawful employment

practice." Id. (citation omitted).  To do so, she must show that
she was "engaged in statutorily protected expression, viz.,
opposition to a seemingly unlawful employment practice[,]" that
"she suffered an adverse employment action[,]" and that "there was
a causal connection between the statutorily protected expression
and the adverse employment action." Id. at 1371-72 (citations
omitted); see also id. at 1372 ("The plaintiff need not establish
that the action she was protesting was actually an unlawful
employment practice; but rather only that she had a reasonable
belief that the action was unlawful." (citation omitted)).  If
"the plaintiff is able to establish a prima facie case, the burden
shifts to the defendant to articulate some legitimate
nondiscriminatory reason for the adverse employment action." Id.
at 1372 (quotations and citations omitted).  If an employee's
"conduct is unreasonable, [but] borne out of legitimate protest,"
the disciplinary action "does not violate Title VII." Id.
(citations omitted).  If the defendant meets that burden, "the
burden then shifts to the plaintiff to show that the defendant's
articulated reason was truly pretextual for the defendant's actual
discriminatory motive." Id. (citations omitted).

Plaintiff meets the first step of this test, because she
"communicate[d] to her employer a belief that the employer ha[d]
engaged in . . . a form of employment discrimination," thus
constituting her "opposition to the activity." Crawford v. Metro.

Govt. of Nashville and Davidson Cty., Tenn., 555 U.S. 271, 276 (2009) (citations and emphasis omitted).  After speaking to her employer, she was disciplined and then suspended shortly after, demonstrating a causal connection between her activity and the adverse employment action.  See SUF ¶ 51.

Defendant does not dispute this first step, but instead focuses on the second and third steps.  Defendant argues that the City did not retaliate against Plaintiff because she engaged in protected activity, but rather because she expressed her opposition in a time, place, and manner that were unreasonable. See Mem. Supp. Mot. Summ. J. 16, ECF No. 18-1; see also Def.'s Reply to Pl.'s Opp'n 7-8, ECF No. 26; Jennings, 864 F.2d at 1372. Defendant thus argues, by implication, that Plaintiff cannot demonstrate that the City's articulated reason is pretextual.

Specifically, Defendant states that Plaintiff's choice to "dress down" her supervisor "during the workday," "in a communal workspace before an audience of her co-workers and Mr. Lykins' subordinates [that was] open to the public," was "patently unreasonable."  Mem. Supp. Mot. Summ. J. 21.  Defendant notes that she could have instead "met with Lykins in a private setting[,] filed a grievance[,] gone to Human Resources[,]" or accessed other resources to express her complaints, such as the City's Equal Employment Opportunity Officer.  Id. at 22.  All of these

7

approaches would have been well known to the Plaintiff, a union steward.  SUF ¶¶ 3-4.

Defendant relies on two cases to support its contentions, Kiel v. Select Artificials, Inc., 169 F.3d 1131 (8th Cir. 1999), and Creal v. Springhill Ford, Inc., No. 06 C 0175, 2007 WL 3120106 (N.D. Ill. Oct. 19, 2007).  In Kiel, a deaf employee requested repeatedly that his company purchase a telecommunications device for him.  169 F.3d at 1134.  When a co-owner of the company informed him that the company would not purchase the device, the employee shouted in front of multiple other employees, "You're selfish, you're selfish" while "[v]isibly frustrated and upset . . . ." Id.  He then slammed his desk drawer and made a comment about the co-owner's recent purchase of a new car.  Id.  The Eighth Circuit affirmed the district court's grant of summary judgment for the defendant, holding that while the "requests for a [telecommunications device] were protected communications[,] [i]nsulting [the co-owner] and indulging in an angry outburst in the presence of co-workers . . . were certainly not, [as there is] no right to be rude." Id. at 1136.  In Creal, an employee arrived 45 minutes late to work, and when reprimanded, "express[ed] irritation with [his supervisor for] 'riding him' or 'getting on him' and then accuse[d] [him] of racially discriminating against him" while swearing.  2007 WL 3120106, at *8.  The district court granted summary judgment in the employer's favor.  Id. at *9.

The facts here are not as clear cut.  To begin with, Plaintiff and Mr. Rodriguez's account of the conversation differs significantly from Mr. Lykins'.  At his deposition, Mr. Lykins testified that Plaintiff called him a racist "quite loudly" and "talked about what [Mr. Lykins] was doing for the black guy as opposed to the white guy."  Lykins Dep. 23:7-10.  But Plaintiff contends that she did not raise her voice in their "frank, informal conversation" and merely "questioned whether there was a 'racial element' to the Department's decision making" and that Mr. Lykins responded to her by saying "You're full of shit."  Opp'n to Summ. J. 4, 13, ECF No. 23 (citing Rodriguez Aff. ¶ 7, ECF No. 25-7; Quezada Dep. 29).  The fact that Plaintiff raised these concerns in an open office setting is not per se unreasonable, as "[t]he law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges."  Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir. 2000) (citation omitted).  Clearly a genuine issue of material fact exists as to whether Plaintiff's behavior was "unreasonable[.]"  Jennings, 864 F.2d at 1372.

Even if Plaintiff's conduct is found to be unreasonable meeting the second prong of the McDonnell Douglas test, a

reasonable jury could also find that the City's suspension of Plaintiff was pretextual.  The City had an open position available for which an employee, Mr. Rodriguez, appeared to be qualified. Posting Request Form, ECF No. 25-8.  The employee's application was apparently pending for several months.  Rodriguez Aff. ¶ 9. But when asked about the status of the position, Mr. Lykins stated that the Department was considering implementing new testing requirements for positions like the one to which Mr. Rodriguez applied, even though the position had already been advertised. Id. at ¶ 8.  The reasoning Mr. Lykins provided for this was unclear at best.  See Lykins Dep. 29:1-32:25.  Moreover, there is disputed evidence that the Department had previously terminated an African-American apprentice inspector after his six-month apprenticeship for failing to pass a required test but did not terminate a white apprentice inspector, who had failed the test, until shortly after Plaintiff raised the issue in her conversation with Mr. Lykins. See Lykins Dep. 22:15-23:10, 26:25-27:19; Rodriguez Aff. ¶ 6.

"When assessing a claim of pretext in an employment discrimination case, an inquiring court must focus on the motivations and perceptions of the actual decisionmaker." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) (citation omitted).[1]  While Ms. Bailey made the decision to suspend the

_____

[1] In analyzing the facts present here, the Court reviews the information decision-makers received as reflective of their

10

Plaintiff, Mr. Lykins discussed his recommendations for appropriate discipline for Plaintiff with Ms. Bailey after Plaintiff's disciplinary hearing.  SUF ¶ 44.  This is all enough for a jury to conclude that the City's stated reason was actually a pretext for retaliation against Plaintiff for raising a complaint of discrimination against Mr. Rodriguez.  Defendant's Motion for Summary Judgment as to Plaintiff's claims is DENIED.

IV.  DAMAGES

In the alternative, Defendant argues that it is entitled to partial summary judgment on Plaintiff's claim for damages for emotional distress.  Plaintiff asserts that she suffered damages of emotional distress arising from the news coverage of her suspension.  Opp'n to Summ. J. 19-20.  "An award of damages for emotional distress must be supported by competent evidence of genuine injury[.]"  Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 235 (1st Cir. 2006) (citation and quotation omitted).  A plaintiff must also prove that the defendant's actions "caused her emotional distress."  Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1215 (6th Cir. 1996).  "Summary judgment is proper when a plaintiff

---

reasoning for suspending Plaintiff, rather than for the truth of the matter asserted.  Ramirez Rodriguez v. Boehringer Ingelhelm Pharmaceuticals, Inc., 425 F.3d 67, 76-77 (1st Cir. 2005) (holding that a company's offering of report and statements to demonstrate why employee's practice was inconsistent with company policy was not hearsay because it "explain[ed] the basis for its decision to terminate [the employee]").  As presented, Defendant's evidence is not hearsay, as it addresses the decision-makers' state of mind.

11

fails to present evidence that the defendant's negligence was the proximate cause of the plaintiff's injury or evidence from which a reasonable inference of proximate causation may be drawn." Hall v. Eklof Marine Corp., 339 F. Supp. 2d 369, 377 (D.R.I. 2004) (parenthetical and citations omitted).

Plaintiff's claim of actual injury arising from the emotional distress she suffered centers around general frustration and conjecture. When asked how the emotional distress impacted her, she stated, "A lot. Well, like I said at one point, the only thing you have in your life is your name. . . Because when they put your name in every newspaper in all the news, and they don't say why they suspended you, people can think whatever they want." Quezada Dep. 71:12-22, ECF No. 18-6. However, where this claim for damages clearly fails is causation. Plaintiff states that she "heard" that someone from the City of Providence leaked the news of her suspension, and that "[e]verybody [she] asked, they said it has to be the [C]ity because nobody knew about it." Quezada Dep. 68:24-69:13. But a belief that no one else knew about her suspension except for herself and the City is not enough to plausibly demonstrate that the City leaked the news of suspension, as this "speaks in terms of possibilities . . . and does not state with sufficient degree of positiveness that Plaintiff's injuries are the result of [Defendant's conduct]." Hall, 339 F. Supp. 2d at 377 (citation and quotation omitted). Accordingly, Defendant's

Motion for Summary Judgment is GRANTED as to Plaintiff's claim of damages for emotional distress.

V.   CONCLUSION

     For the reasons described above, Defendant's Motion for Summary Judgment, ECF No. 18, is DENIED in part and GRANTED in part.


IT IS SO ORDERED.


_____
William E. Smith
District Judge
Date:  March 29, 2021

13